UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| BRUCE W. BROOKS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 1:08-CV-00019 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff Bruce W. Brooks appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI").[1] (*See* Docket # 1.) For the following reasons, the Commissioner's decision will be AFFIRMED.

## I. PROCEDURAL HISTORY

Brooks applied for DIB and SSI on June 16, 2004, alleging that he became disabled as of January 2002. (Tr. 56-68.) He later amended his onset date to January 22, 2004, when it came to light that he had engaged in substantial gainful activity in 2002 and 2003. (Tr. 56-68, 443.) The Commissioner denied Brooks's application initially and upon reconsideration, and Brooks requested an administrative hearing. (Tr. 30-31, 39.) A hearing was conducted by Administrative Law Judge (ALJ) Yvonne Stam on November 21, 2006, at which Brooks (who

---

[1] All parties have consented to the Magistrate Judge. *See* 28 U.S.C. § 636(c).

was represented by counsel) and a vocational expert testified. (Tr. 438-80.)

On June 8, 2007, the ALJ rendered an unfavorable decision to Brooks, concluding that he was not disabled because he could perform a significant number of jobs in the national economy despite the limitations caused by his impairments. (Tr. 15-25.) The Appeals Council denied Brooks's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 5-8.) Brooks filed a complaint with this Court on January 16, 2008, seeking relief from the Commissioner's final decision. (Docket # 1.)

## II. BROOKS'S ARGUMENTS

Brooks alleges three flaws with the Commissioner's final decision. Specifically, Brooks claims that the ALJ (1) erred by concluding that he did not satisfy Listing 12.05C, the listing for mental retardation; (2) improperly assessed his residual functional capacity ("RFC"); and (3) failed to consider his mental and physical impairments in combination. (Opening Br. of Bruce W. Brooks in Social Security Appeal ("Opening Br.") 4-12.)

## III. FACTUAL BACKGROUND[2]

*A. Background*

At the time of the ALJ's decision, Brooks was fifty-two years old; had attended school through the eighth grade with a history of special education; and possessed work experience as a cutting machine operator, garbage truck driver, and heavy equipment operator. (Tr. 56, 447, 457, 459, 474-75.) Brooks alleges that he cannot work due to a limited ability to read and write, blindness in his left eye, lower back pain, repaired right rotator cuff tear with limited mobility, intermittent cervical stiffness and pain, and stable asymmetrical sensorineural hearing loss. (Tr.

---

[2] In the interest of brevity, this Opinion recounts only the portions of the 480-page administrative record necessary to the decision.

2

68; Opening Br. 8.)

At the hearing, Brooks testified that he lives with a friend in his friend's house and that he has been looking for work since leaving his last job in 2004. (Tr. 441-44.) He confided that he got fired from his last job because he could not get along with one of his supervisors. (Tr. 441-44.) He explained that he now receives Medicaid benefits. (Tr. 470-72.)

Educationally, Brooks explained that he was in special education classes and that he only went to school through the eighth grade, dropping out to go to work in his father's garbage business, which was later bought by National Serv-All. (Tr. 447, 457-58, 465.) He testified that he does not read and write, explaining that reading the paper "takes [him] too long," though he does read the car ads. (Tr. 449-51, 457.) He reported that through taking a reading class at the library, he learned that he reads at a third-grade level. (Tr. 458-59.)

Brooks further testified that he can write his name and copy a number or name from a document, but that if he tries to write it "straight out," he will not "get it right"; he stated that he cannot write a letter. (Tr. 457-58, 473.) He also reported that he "can't do checks" or make change, though he does successfully pay bills with cash on a face-to-face basis. (Tr. 449-51.) Brooks claims he does "nothing through the mail" and that he does not make long distance phone calls because he gets the numbers mixed up. (Tr. 449-51.) He reported that he has a driver's license but that he took the driver's examination orally. (Tr. 449.)

When asked to describe his daily activities, Brooks explained that he cares for his sisters' lawns, checks on their houses, and runs errands for them. (Tr. 456.) He further reported that he likes to work on his "invention" in his friend's garage. (Tr. 454.) Brooks elaborated that his invention recycles garbage in that it takes five to ten garbage truck loads and "breaks it down to

one." (Tr. 454.) He emphasized that his invention is the "best . . . ever seen" and that his father has been encouraging him to do it since he was fifteen years old. (Tr. 454-55, 457-68, 465.) Brooks also explained that he took a scale model of his invention to a garbage collection official at the city county building, who said it was the "best concept and the lowest maintained building she's ever seen of operation". (Tr. 455.) He further reported that the city wanted to try it but that three procedural issues prevented it from doing so. (Tr. 455-56.) Brooks testified that he continues to work on the invention, doing "some measuring and figur[ing] out how - - to measure out the size of the plant that [he] need[s] . . . and how much property [he] need[s] . . . ." (Tr. 456.)

When testifying about his physical abilities, Brooks stated that he can lift "[l]ess than 25 pounds" and that he cannot pick up anything higher than his chest because his arm "starts burning." (Tr. 445, 469.) He admitted, however, that he had not seen his doctor for his rotator cuff in the past year. (Tr. 446.) He elaborated that he could stand for "about a half hour" and that, depending on the type of chair, he could sit "anywhere from a half hour, an hour, [to a] couple of hours." (Tr. 448.) He added that he cannot "lean over for very long," that he can only do about fifteen minutes of shoveling, that he gets sharp pains in his back, and that his legs sometimes hurt and then go numb. (Tr. 448, 469.)

### B. *Summary of the Relevant Medical Evidence*

In July 2004, Dr. E. Montoya, a state agency physician, reviewed Brooks's medical records. (Tr. 274-81.) He concluded that Brooks in an eight-hour workday could lift up to twenty pounds occasionally and ten pounds frequently; stand or walk for six hours; sit for six hours; never climb ladders, ropes, or scaffolds; was limited from reaching on the right due to a

4

shoulder condition; and was limited from exposure to hazards. (Tr. 277.)

That same month, W. Shipley, Ph.D., a state agency psychologist, reviewed Brooks's medical record. (Tr. 282-95.) He noted Brooks's claim that he was unable to read and write and that no special education records were available. (Tr. 294.) He further noted Brooks's "good job history" and his many activities of daily living, including performing home and auto repairs, preparing basic meals, and shopping for groceries.[3] (Tr. 294.)

On November 17, 2004, Kenneth Bundza, Ph.D., assessed Brooks's mental functioning. (Tr. 301-06.) A Wechsler Adult Intelligence Scale-Revised (WAIS-R) indicated that Brooks had a full scale intelligence quotient (IQ) of 67, a performance IQ of 70, and a verbal IQ of 69. (Tr. 301, 303, 305.) Dr. Bundza noted Brooks's special education history, his steady employment since the age of sixteen, and his daily activities, which included light housework, socialization with friends, and automotive maintenance. (Tr. 302.) Dr. Bundza further observed that Brooks demonstrated adequate verbal communication skills and that he was able to understand the interview and examination questions. (Tr. 302.) His speech was reasonably clear and articulate; his arithmetic skills were limited to simple addition, subtraction, and multiplication problems. (Tr. 302.) Dr. Bundza noted Brooks's difficulty with reading, spelling, and math; thought that he demonstrated "a rather concrete and unsophisticated style of thinking"; and concluded that he was not capable of managing his own funds. (Tr. 303-04.) He ultimately opined that Brooks's IQ scores were in the upper limit of mild mental retardation and that he had a depressive disorder for which he received no treatment. (Tr. 303-04.)

---

[3] The record reflects that Brooks was steadily employed from 1970 (when he was sixteen years old) until 2004 (the year of his amended alleged onset date). (*See* Tr. 64-65.)

5

Later that same month, on November 29, 2004, R. Klion, Ph.D., a state agency psychologist, reviewed Brooks's medical records. (Tr. 307-25.) He indicated that Brooks had an organic mental and affective disorder but that he did not meet the listings for these impairments. (Tr. 307, 317.) He also indicated that Brooks had borderline intellectual functioning and depression. (Tr. 308, 310.) According to Dr. Klion, Brooks had a moderate restriction of daily living activities; mild difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 317.) Dr. Klion indicated that Brooks had no significant limitations in most areas of mental functioning but that he had a moderate limitation in his ability to understand, remember, and carry out detailed instructions, and to maintain attention and concentration for extended periods. (Tr. 321-22.) He was also moderately limited in his ability to complete a normal workday without interruptions from psychologically-based symptoms. (Tr. 322.) Dr. Klion noted Brooks's lengthy work history and that he was able to function quite autonomously, concluding that these facts were inconsistent with a diagnosis of mild mental retardation. (Tr. 323, 325.) According to Dr. Klion, despite having a severe psychological condition, Brooks retained the mental capacity to perform simple, repetitive tasks. (Tr. 323.)

In February 2006, Dr. Scott Waters, Brooks's family practitioner, diagnosed him with depression and prescribed medication. (Tr. 405.) Brooks reported improvement in his symptoms the following month, including better concentration. (Tr. 397.) He experienced no side effects from the medication. (Tr. 397.) Dr. Waters noted that Brooks's depression was stable, scheduling a follow-up visit in six months. (Tr. 397.)

In August 2006, Brooks returned to Dr. Waters, and Dr. Waters documented that he was

6

"doing well," noting that his depression was stable on medication. (Tr. 387.)

In December 2006, Brooks was seen by Dr. Michael Disher due to a "plugged sensation" in his right ear and gradual hearing loss in his left ear. (Tr. 381-82.) Dr. Disher's impression was that Brooks had stable asymmetrical sensorineural hearing loss; thus, a hearing aid trial was performed. (Tr. 381.) Dr. Disher documented, however, that Brooks was "currently not interested in pursuing hearing aids" and that he would follow-up with him in one year. (Tr. 381.)

## IV. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

## V.  ANALYSIS

*A.  The Law*

Under the Act, a claimant is entitled to DIB or SSI if he establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform his past work; and (5) whether the claimant is incapable of performing work in the national economy.[4] *See* 20 C.F.R. §§ 404.1520, 416.920; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).  An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).  A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the

---

[4] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite his limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(e), 416.920(e).

8

Commissioner. *Clifford*, 227 F.3d at 868.

## B. The ALJ's Decision

On June 7, 2007, the ALJ rendered his opinion. (Tr. 15-25.) He found at step one of the five-step analysis that Brooks had not engaged in substantial gainful activity since his amended alleged onset date. (Tr. 17.) At step two, the ALJ concluded that Brooks had the following severe impairments: status-post right shoulder rotator cuff repair, cervical and lumbar spine pain, loss of vision in the left eye, and borderline intellectual functioning. (Tr. 18.) At step three, the ALJ determined that Brooks's impairment or combination of impairments were not severe enough to meet a listing. (Tr. 19.)

Before proceeding to step four, the ALJ determined that Brooks's testimony of debilitating limitations was "not entirely persuasive" and that he had the following RFC:

> [T]he claimant has the residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently, sit for six hours, stand and walk in combination for six hours for a total of eight hours per workday, climb stairs and ramps, balance, stoop, kneel, crouch or crawl frequently but never climb ladders, ropes or scaffolds. He has no limitations reaching with the left upper extremity but reaching on the right is limited to frequent less than 90 degrees but otherwise not more than occasionally. He must avoid concentrated exposure to hazards including machines and unprotected heights and is limited to reading at the 3rd grade level.

(Tr. 19.) Based on this RFC and the VE's testimony, the ALJ concluded at step four that Brooks was unable to perform any of his past relevant work. (Tr. 23.) The ALJ then concluded at step five that Brooks could perform a significant number of jobs within the economy. (Tr. 24.) Therefore, Brooks's claim for DIB and SSI was denied. (Tr. 24-25.)

## C. The ALJ's Step Three Finding That Brooks Did Not Meet or Equal a Listing Is Supported by Substantial Evidence

Brooks first argues that the ALJ erred at step three by concluding that he did not meet or

equal the requirements of Listing 12.05(C), the mental retardation listing. Brooks's argument fails to warrant a remand of the Commissioner's final decision, as substantial evidence supports the ALJ's step three finding.

The introduction to the mental impairment listings states: "If your impairment satisfies the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria, we will find that your impairment meets the listing." 20 C.F.R. Pt. 404, Subpart P, App. 1 § 12.00A (emphasis added); *see also Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006); *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 579 (7th Cir. 2003); *Scott v. Barnhart*, 297 F.3d 589, 595 n.6 (7th Cir. 2003). Specifically, the diagnostic description set forth in Listing 12.05 defines mental retardation as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt P, App. 1 § 12.05. Thus, Brooks must satisfy the requirements of this diagnostic description *in addition to* the specific requirements articulated in Listing 12.05C. In that vein, Listing 12.05C specifically requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function." *Id*.

Here, the Commissioner does not dispute that Brooks's IQ scores satisfy the requirements of Listing 12.05C and that he has a physical impairment that imposes additional and significant work-related limitation of function. *See generally Elster v. Barnhart*, No. 01 C 4085, 2003 WL 124432, at *5 (N.D. Ill. Jan. 13, 2003) (articulating that a finding that the claimant has a "severe" impairment at step two satisfies the second requirement of Listing 12.05C of an additional

physical or mental impairment that imposes significant work-related limitation of function). Rather, the Commissioner emphasizes that the ALJ concluded that Brooks did not meet Listing 12.05C because he failed to provide evidence demonstrating the onset of the impairment before the age of 22. More specifically, the ALJ reasoned:

> During a consultative examination in November of 2004, Kenneth Bundza, Ph.D., administered the Wechsler Adult Intelligence Scale-III (WAIS-III). The claimant achieved the following scores: Verbal I.Q. – 69; Performance I.Q. – 70; and, Full Scale I.Q. – 67. Dr. Bundza interpreted these scores as placing the claimant " . . . toward the upper limit of the Mild Mental Retardation range of intellectual functioning". Upon review of Dr. Bundza's report, a State agency advising psychologist interpreted the test results as showing borderline intellectual functioning under Section 12.02 of the listings. I agree with the diagnosis of borderline intellectual functioning. In reaching this conclusion, I note the claimant alleges mild mental retardation. Mental retardation is considered under Section 12.05, and requires evidence demonstrating or supporting onset of the impairment before age 22. As previously noted, attempts to secure the claimant's school records proved unsuccessful. Therefore, the claimant cannot demonstrate the applicability of Section 12.05. In addition, the claimant's presentation at hearing is more consistent with borderline intellectual functioning, as is his work history.

(Tr. 18 (citations omitted).)

Brooks now asserts that "the ALJ erroneously concluded that proof of the onset of his impairment before age 22 could not be made without the school records," stating that school records are merely one way of proving the applicability of Listing 12.05C. (Opening Br. 6.) Brooks emphasizes that he introduced other evidence at the hearing of his mental retardation, pointing to his testimony that he dropped out of school in the eighth grade, was taught in special education classes, and was held back a grade on one or two occasions during his elementary school years. (Opening Br. 5.)

Indeed, as Brooks asserts, school records are not the only way of proving the applicability of Listing 12.05C. However, what Brooks fails to acknowledge is that it is *his*

burden to produce evidence of the criteria necessary to satisfy Listing 12.05C. *See Mayes v. Astrue*, No. 1:07-cv-0193-DFH-TAB, 2008 WL 126691, at *6 (S.D. Ind. Jan. 10, 2008) (finding that claimant did not carry his burden with respect to Listing 12.05C where he failed to provide any school records showing that he was in special education classes and the evidence of record indicated that he was independent in daily living activities). Here, Brooks has failed to carry his burden. The primary evidence he points to in this regard is his own hearing testimony (*see* Opening Br. 4-6), which the ALJ concluded was "not entirely persuasive" – a finding that Brooks does not challenge on appeal. *See generally Glenn v. Sec'y of Health & Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987) ("When an applicant for social security benefits is represented by counsel the administrative law judge is entitled to assume that the applicant is making his strongest case for benefits.").

Furthermore, contrary to Brooks's assertion, the ALJ did not reject Listing 12.05C solely because the record was devoid of his school records. Rather, the ALJ *also* reasoned that Brooks's lengthy work history at a semi-skilled job was inconsistent with the evidence of mild mental retardation. (*See* Tr. 323, 325.) Indeed, "[a]lthough low IQ scores are indicative of retardation, other factors, such as the claimant's life activities and employment history, must be considered and weighed and properly play into the ALJ's analysis." *Adkins v. Astrue*, 226 F. App'x 600, 605 (7th Cir. 2007) (concluding that the claimant failed to demonstrate deficits in adaptive functioning prior to age twenty-two where he was gainfully employed until the age of forty-one without material complaints from his employers and the record contained only minimal evidence about his cognitive and medical state before age twenty-two other than his own testimony that he completed school only through the eighth grade); *Novy v. Astrue,* 497 F.3d

12

708, 710 (7th Cir. 2007) (determining that the claimant did not exhibit deficits in adaptive functioning where the claimant lived independently and cared for three children despite her intellectual limitations); *Witt v. Barnhart*, 446 F. Supp. 2d 886, 895-06 (N.D. Ill. 2006) (concluding that the claimant failed to exhibit deficits in adaptive functioning manifested prior to age 22 because of his eighteen-year work history, even though he suffered from learning disabilities and received poor marks in special education classes); *Cooper v. Massanari*, No. 00 C 8083, 2001 WL 1464930, at *8-9 (N.D. Ill. Nov. 15, 2001) (finding that though the claimant had taken special education classes and had only a ninth grade education, her work history and functional activities were ample evidence to support the ALJ's conclusion that she did not satisfy the adaptive deficits requirement of Listing 12.05C).

On that score, the ALJ's reasoning is amply supported by the opinion of Dr. Klion, who expressly stated that Brooks's lengthy work history and his autonomous functioning were inconsistent with a diagnosis of mental retardation and that he retains the capacity to perform simple, repetitive tasks. (Tr. 323, 325.) Moreover, in concluding that Brooks did not satisfy Listing 12.05C, the ALJ relied upon not only the opinion of Dr. Klion, but *also* the opinion of Dr. Shipley, who likewise concluded that Brooks's mental impairment did not meet or equal a listing.

To elaborate, Dr. Shipley and Dr. Klion each completed a Disability Determination and Transmittal form at the initial and reconsideration levels, respectively, concluding that Brooks was not disabled. (Tr. 30-31.) The Seventh Circuit Court of Appeals has articulated that "[t]hese forms conclusively establish that consideration by a physician . . . designated by the Commissioner has been given to the question of medical equivalence at the initial and

13

reconsideration levels of administrative review." *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (internal quotation marks and citations omitted). Consequently, "[t]he ALJ may properly rely upon the opinion of these medical experts." *Id.* (citing *Scott v. Sullivan*, 898 F.2d 519, 524 (7th Cir. 1990)); *see also* SSR 96-6p.

When conflicting medical evidence exists, "in the end, 'it is up to the ALJ to decide which doctor to believe . . . .'" *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996) (citation omitted); *see Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) ("Weighing conflicting evidence from medical experts . . . is exactly what the ALJ is required to do."). Here, the ALJ properly considered and resolved the conflicting opinions of Dr. Bundza, who opined that Brooks was mildly mentally retarded, and Dr. Klion, who concluded that Brooks had borderline intelligence. We will not accept Brooks's invitation to merely reweigh the evidence at this juncture. *See Young*, 362 F.3d at 1001 (emphasizing that a court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner"; rather, its "task is limited to determining whether the ALJ's factual findings are supported by substantial evidence").

Thus, Brooks's argument that the ALJ erred at step three by finding that he did not meet or equal a listing is simply unavailing.

### D. The ALJ's RFC Is Supported by Substantial Evidence

Next, Brooks challenges the RFC assigned by the ALJ. He summarily asserts that the ALJ's decision "does not assess his RFC realistically or in a way that is logically consistent with his severe and non-severe impairments, let alone his testimony at the benefits hearing." (Opening Br. 10.)

The RFC assessment is an issue reserved to the ALJ, though an ALJ may ultimately decide to adopt the opinions expressed in a medical source statement concerning the ability of a claimant to perform work-related activities. 20 C.F.R. §§ 404.1527(e), 416.927(e); SSR 96-5p. The RFC assessment "is based upon consideration of *all* relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence." SSR 96-5p (emphasis added); *see* 20 C.F.R. §§ 404.1545, 416.945.

Here, at the outset of his decision, the ALJ expressly emphasized that he would consider all of Brooks's impairments, both severe and non-severe, when determining his RFC. (Tr. 17.) Then, at the point in his decision when he actually assigned Brooks the RFC, the ALJ specifically stated: "In making [the RFC] finding, I considered *all* symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. 19 (emphasis added).) Thus, Brooks's assertion that the ALJ failed to consider Brooks's severe and non-severe impairments in combination is expressly defied by the record.

In fact, Brooks's argument that the RFC "cannot be squared with his testimony at the benefits hearing" particularly misses the mark. In that regard, Brooks ignores the ALJ's conclusion that Brooks's testimony about his symptoms was "not entirely persuasive" (Tr. 20), a finding that Brooks does not challenge on appeal. Because of this credibility finding, we *would not expect* the RFC assigned by the ALJ to be "logically consistent" with Brooks's own

description of his symptoms.

Moreover, as the Commissioner emphasizes, in determining Brooks's RFC the ALJ relied upon the opinion of the state agency physicians, expressly noting that the RFC he assigned was consistent with the limitations expressed by those physicians. (Mem. in Supp. of the Commissioner's Decision 11; Tr. 23.) To reiterate, "[t]he ALJ may properly rely upon the opinion of these medical experts." *Scheck*, 357 F.3d at 700; *see* 20 C.F.R. §§ 404.1527(f), 416.927(f) ("Administrative law judges must consider the findings of State agency medical and psychological consultants . . . as opinion evidence . . . ."); SSR 96-5p.

Consequently, Brooks's second argument also fails to warrant a remand.

*E. The ALJ Considered Brooks's Impairments in Combination*

Brooks's final argument – that the ALJ failed to consider the combined effects of his mental and physical impairments – is, for the most part, a reiteration of his second argument. Nonetheless, we will separately address it for purposes of completeness. Here, Brooks asserts that his status-post right shoulder rotator cuff repair, cervical and lumbar spine pain, and loss of vision in his left eye, when coupled with his mental limitations, make the performance of any sustained work "unrealistic at best". (Opening Br. 11.)

As emphasized *supra*, contrary to Brooks's assertion, "[n]o evidence in the record suggests that the ALJ failed to consider the combined effects of [Brooks's] impairments." *Robinson v. Apfel*, No. 97 C 8727, 1999 WL 160068, at *7 (N.D. Ill. Mar. 12, 1999). Rather, the ALJ specifically explained that at step two she must determine whether Brooks has a severe impairment or "combination of impairments". (Tr. 16.) At step three, the ALJ expressly stated that she must consider whether Brooks's impairment or "combination of impairments" meets or

equals a listing. (Tr. 16, 19; Mem. in Supp. of the Commissioner's Decision 7.) And again, in connection with making the RFC finding, the ALJ acknowledged that she "must consider all of the claimant's impairments, including impairments that are not severe . . . ." (Tr. 17), and then specifically represented that she "considered all symptoms" (Tr. 19).

In fact, it is quite obvious that the ALJ did not ignore any of Brooks's mental or physical problems, as she penned with particularity more than five pages about Brooks's various impairments (*see* Tr. 18-23); *compare Clifford*, 227 F.3d at 873 ("The ALJ, rather than blind himself to this condition (and other relevant evidence), should have considered the weight issue with the aggregate effect of her other impairments."), *with Johnson v. Barnhart*, 449 F.3d 804, 807 (7th Cir. 2006) ("[T]here is no indication that in assessing [the claimant's] joint problems the administrative law judge gave insufficient weight to the effect on them of [the claimant's] obesity . . . ."). Furthermore, Brooks does not explain with any specificity how the combination of his current psychological and physical conditions would have a direct effect on his ability to perform the jobs that the ALJ concluded he could perform, that is, the work of a laundry folder, small parts assembler, or cleaner or maid. *See, e.g., Johnson*, 449 F.3d at 807 ("There is no evidence that [the claimant's] obesity would have a *direct* effect on her ability to do sedentary work . . . .").

Therefore, like his first two arguments, Brooks's final attack on the ALJ's decision also fails to warrant his request for relief. Consequently, the Commissioner's final decision will be affirmed.

## VI. CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is AFFIRMED. The

Clerk is directed to enter a judgment in favor of the Commissioner and against Brooks.

SO ORDERED.

Enter for this 23rd day of December, 2008.

S/Roger B. Cosbey  
Roger B. Cosbey,  
United States Magistrate Judge